**CONFORMED**

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Shon Morgan (Bar No. 187736)
2    shonmorgan@quinnemanuel.com
   Rachel Juarez (Bar No. 273133)
3    racheljuarez@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Of Counsel:

7    Stephen R. Neuwirth
     stephenneuwirth@quinnemanuel.com
8    Julia J. Peck
     juliapeck@quinnemanuel.com
9  51 Madison Avenue, 22nd Floor
   New York, New York  10010
10 Telephone:  (212) 849-7000
   Facsimile:  (212) 849-7100

11
   Attorneys for Plaintiffs
12 TELEVISA, S.A. DE C.V. and

13 TELEVISA TALENTO, S.A. DE C.V.

14            UNITED STATES DISTRICT COURT

15       FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 TELEVISA, S.A. DE C.V. and          CASE NO. 12  9799 ~CBM
17 TELEVISA TALENTO, S.A. DE C.V.,                    (MANx)

18              Plaintiffs,           **COMPLAINT**

19 against

20 LIBERMAN BROADCASTING, INC.,
   ESTRELLA TV, and LENARD D.
21 LIBERMAN,

22              Defendants.

23

24

25

26

27

28

                                              COMPLAINT

1   Plaintiffs  Televisa, S.A. de C.V. ("Televisa S.A.") and Televisa Talento, S.A.
2   de C.V. ("Televisa Talento") (together, "Televisa"), through their undersigned
3   attorneys, by and for their Complaint, allege upon personal knowledge as to their
4   own acts, and on information and belief based upon their own and their attorneys'
5   investigation as to all others, as follows:

6                                    **Introduction**

7          1.     This dispute arises out of the tortious interference by defendants
8   Liberman Broadcasting, Inc. ("LBI"), Estrella TV, and Lenard D. Liberman
9   (collectively "Liberman") with a valid and enforceable exclusivity agreement,
10  effective March 1, 2012, between Televisa, a Mexico-based international media
11  company, and the Mexican television personality Krzysztof Raczynski Tatomir,
12  known artistically as "Kristoff" (the "Exclusivity Agreement").  Specifically,
13  Liberman has knowingly taken actions that have induced Kristoff to breach the
14  Exclusivity Agreement with Televisa.

15         2.     Televisa seeks preliminary and permanent injunctive relief barring
16  Liberman from continuing to interfere with the Exclusivity Agreement by
17  employing Kristoff and using his services and image.  Absent injunctive relief,
18  Televisa has suffered, and will continue to suffer, irreparable harm.

19         3.     Among other things, Televisa owns and operates the subscription
20  television channel known as Telehit.  Telehit shows lifestyle and music
21  programming, serving a young adult audience.  Telehit is broadcast in twenty two
22  countries throughout the world, including in Mexico, Latin America, Europe, and
23  the United States.  Programming produced by Televisa is broadcast in the United
24  States through Univision and related Spanish-language television stations.

25         4.     Estrella TV  is a privately-held Spanish-language television network
26  owned and operated by Liberman.  Estrella TV competes in the Spanish-language
27  television market in the United States with Telehit and Univision.

28

-1-

5.      Starting in the mid-1990s, Televisa invested substantial professional and financial resources to develop Kristoff as a TV host and personality. Kristoff has served as the lead host of several popular and long-running Telehit programs, designed exclusively for him, including "No Te Equivoques"; "Gargaras Con Kristoff"; "Neceando Con Kristoff"; "ID"; "Corazón de Metal"; "Música Con Kristoff"; and "El Show Del Polaco." Kristoff has also made a variety of special appearances for Televisa. For the past several years, Kristoff has been the host of two popular weekly programs, "Sexo Con Kristoff," a late-night sex talk program, and "Cine Con Kristoff," in which Kristoff reviewed and discussed movies. Kristoff has also been hosting a music-video program, "Maratón Telehit," which occupies a multiple hour time-slot every several weeks.

6.      Kristoff's programming and special appearances have generated substantial goodwill from television audiences that faithfully tune into Telehit to view programs hosted by Kristoff, as well as from advertisers that wish to communicate with those audiences. Kristoff's most recent feature shows, the long-running "Cine Con Kristoff" and "Sexo Con Kristoff," consistently received top viewer ratings in their respective 3:30 p.m. and midnight time slots.

7.      Kristoff's programs are, like other Telehit programming, broadcast not only to Telehit's more than nine million subscribers in Mexico, but also to audiences in over twenty-one foreign countries, including the United States, where Telehit currently has distribution or licensing arrangements. Kristoff's expansive knowledge of cinema, music, and other pop culture topics, combined with his unique artistic methods, charm and television presence—cultivated under Televisa's sponsorship—are irreplaceable services that Televisa cannot duplicate or substitute in the marketplace. Most recently, Televisa was in the process of working with Kristoff to develop a new show, "Lavadero Center," that Televisa expected would both prove successful for the Telehit network and further enhance

COMPLAINT

1  Kristoff's already broad brand recognition within Mexico and in the twenty-one
2  other countries where Telehit is broadcast.

3       8.     Effective March 1, 2012, Televisa and Kristoff entered into the
4  Exclusivity Agreement, pursuant to which, for due consideration, including
5  (without limitation) monthly payments, Kristoff agreed (among other things) to
6  provide his artistic services and use of his image to Televisa on an exclusive basis
7  for a three-year term.  On August 1, 2012, Televisa and Kristoff amended the
8  agreement to increase by 50 percent the amount of monthly payments Televisa
9  would pay to Kristoff.

10       9.     At all relevant times, Liberman was aware that Kristoff is party to an
11  Exclusivity Agreement with Televisa, and was aware of that fact when it negotiated
12  and entered into an agreement with Kristoff, without Televisa's knowledge,
13  pursuant to which Kristoff would provide his artistic services and use of his image
14  to Estrella TV.

15       10.    Kristoff's employment with and/or work for Liberman violates
16  Kristoff's Exclusivity Agreement with Televisa, as does the use of Kristoff's image
17  on Liberman's television networks, stations, and websites, including the Estrella
18  TV website.

19       11.    Liberman knowingly induced Kristoff to breach his contract with
20  Televisa so that Kristoff would instead provide his services to Liberman and
21  Estrella TV.  On October 18, 2012, Kristoff wrote by email to a supervisor at
22  Televisa and stated that he had "met with Mr. Liberman in person," "[w]e talked
23  and solved all my doubts.  I felt comfortable with our chat and with the conditions
24  and I have decided to accept."  In another email sent to Televisa the following day,
25  Kristoff expressly acknowledged that his breach of contract would bear legal
26  consequences: "Beyond the legal problem I will surely have with Televisa due to
27  the exclusivity issue … (I wish it was not so because of the amount that I am paid,
28  but I suppose whether you are a telenovela actor earning 500 thousand or you just

04962.62600/5055524.4

COMPLAINT

appear on a music video channel with my salary, if you breach a contract there are consequences) I hope that we can maintain a cordial relationship because, again, you have never turned your back on me during the past six years." By inducing Kristoff to break his contract with Televisa, Liberman knowingly facilitated that breach.

12. Despite Liberman's knowledge of the Exclusivity Agreement, Liberman induced Kristoff to enter into an agreement to provide his services to Estrella TV, so that Kristoff would immediately begin hosting a new Estrella TV show called "Que Jalada." Episodes of "Que Jalada," hosted by Kristoff, have already aired on Estrella TV. And the show, hosted by Kristoff, is currently slated to be broadcast each weekday at 6 p.m. At the same time, also in breach of the Exclusivity Agreement, Kristoff's image has been shown on the Estrella TV website in connection with advertising for "Que Jalada."

13. Televisa brings this action to enjoin Liberman's continued tortious interference with the Exclusivity Agreement, which interference is causing, and will continue to cause, Televisa substantial and irreparable harm.

**The Parties**

14. Plaintiff Televisa, S.A. de C.V. is a citizen of Mexico in that it is a Mexican corporation, duly incorporated under the laws of the United Mexican States and its principal place of business is Mexico City, Mexico. Plaintiff Televisa, S.A. is an indirect subsidiary of Grupo Televisa, S.A.B., a Mexico City-based international media company, through which Grupo Televisa conducts the operations of its Television Broadcasting, Pay Television Networks, and Programming Exports business units.

15. Plaintiff Televisa Talento, S.A. de C.V. is a citizen of Mexico in that it is a Mexican corporation, duly incorporated under the laws of the United Mexican States and its principal place of business is Mexico City, Mexico. Plaintiff Televisa Talento is a Mexico City-based indirect subsidiary of Grupo Televisa, which

04962.62600/5055524.4

1   primarily handles the talent arrangements with Televisa television and radio

2   performers and personalities.

3         16.    Televisa also operates, among multiple other forms of broadcast and

4   pay-TV programming, a pay television channel, Telehit, that shows lifestyle and

5   music programming serving a young adult audience.  Although Telehit

6   programming is produced primarily in Mexico, that programming is rebroadcast to

7   subscribers in twenty-one other countries throughout the world, including in the

8   United States through Univision.

9         17.    Defendant LBI is a Delaware corporation licensed to do and doing

10   business in the state of California, with its principal place of business at 1845

11   Empire Ave., Burbank, California 91504.  LBI is a producer and broadcaster of

12   Spanish-language television and radio programming.  LBI owns and operates

13   Defendant Estrella TV.  Estrella TV is a California-based  Spanish-language

14   television  broadcast network, with its principal place of business in Burbank,

15   California.  Estrella TV distributes Spanish-language television programming

16   exclusively in the United States.  LBI and Estrella TV operate a production studio

17   in Burbank, California, where they produce their television programming.

18         18.    Lenard Liberman co-founded an LBI subsidiary in 1987 with his

19   father, Jose Liberman, and currently serves as LBI's President, Chief Executive

20   Officer and Secretary.  Mr. Liberman is believed to manage the day-to-day LBI

21   operations, including acquisitions and strategic planning.  The LBI website states

22   that Mr. Liberman is a lawyer and a member of the California bar.  Mr. Liberman is

23   a citizen of California in that he is a resident of the State of California.  His

24   principal place of business also is in the State of California.

25         19.    Liberman competes with Televisa (which distributes its programming

26   in the United States through Univision) in the U.S. Spanish-language television

27   market.

28

04962.62600/5055524.4

-5-

COMPLAINT

**Jurisdiction & Venue**

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because complete diversity of citizenship exists between Plaintiffs, which are both citizens of Mexico with principal places of business in Mexico, and Defendants, all citizens of California or Delaware with principal places of business in California, and the damage that Defendants' actions have caused to Plaintiffs' business, although not readily quantifiable in money damages, would nevertheless surpass $75,000, exclusive of interests and costs.

21.     This Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and California Code Civ. Proc. § 410.10, in that Defendants operate, conduct, engage in, or carry on a business in the State of California; Defendants have an office in the State of California; and Defendants have committed a tortious act within the State of California.

22.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2), because Defendants reside in this District within the meaning of 28 U.S.C. §1391(c); and, on information and belief, a substantial part of the events giving rise to the claim occurred in this District.

**Factual Background**

The Exclusivity Agreement

23.     Kristoff, a 38-year old Mexican TV host and film actor, has been employed by Televisa for over fifteen years and is one of Telehit's most popular television hosts.

24.     Beginning in or around 1996, Televisa and Kristoff entered into the first of a series of contracts, pursuant to which Kristoff agreed to provide his services and use of his image to Televisa on an exclusive basis.

25.     In 2012, Televisa and Kristoff negotiated a new exclusive services agreement for the following three years.

26.   Specifically, in anticipation of and in connection with entering the new Exclusivity Agreement, Kristoff, on February 1, 2012, sent Televisa a letter (the "Offer Letter") in which he offered to Televisa Talento his "exclusive" services for:

> inter alia, (i) artistic performance or interpretation, (ii) representation, characterization, personification, acting or execution of any type of character as determined by Televisa Talento, S.A. de C.V. ("Televisa") or as indicated by any screenplay; (iii) personal presentation to promote any of the productions carried out by Televisa, as such term is defined in the respective Service Agreement (the "Productions"); (iv) the voice interpretations with respect to any of the Productions or any character within the Productions; (vi) handling of products, materials, instruments or accessories indicated by Televisa in the Productions, (vii) commercial promotion of any product within the Productions as required by Televisa; (viii) performance and integration to the Services, of the Commercial Mentions indicated by Televisa within the Productions; (ix) conduction, individually or jointly in any of the Productions, and (x) any other activity provided in the respective Service Agreement, for a period of 3 (three) years, subject to the civil provisions and under the terms established by the Copyright Federal Law.

27.   Subsequently, Televisa Talento and Kristoff entered the Exclusivity Agreement, effective March 1, 2012, pursuant to which Kristoff agreed to provide his artistic services and use of his image to Televisa on an exclusive basis for a three-year term.

28.   The Exclusivity Agreement was modified by an amendment dated August 1, 2012. The amendment increased payments to Kristoff from 20,000 pesos per month to 30,000 pesos per month—that is, a 50 percent increase. The other provisions of the contract, including all of the exclusivity requirements discussed below, were left in force.

29.   At Recitals II(c) of the Exclusivity Agreement, Kristoff represents that:

> he has offered Televisa rendering his Services exclusively by means of the delivery of the Offer Letter;

30.   "Services" are defined in the Exclusivity Agreement as:

> services rendered by the Artist [Kristoff] exclusively to Televisa, including without limitation, (i) artistic acting or interpretation, (ii) representation, characterization, personification or execution of any type of characters, as determined by Televisa or as indicated or

required by the Screenplay; (iii) personal presentations to promote any of the Productions; (iv) voice interpretations with respect to any of the Productions or any character within the Productions; (v) the use of his Image and/or voice; (vi) collaborations and participations, passive or interactive through any Broadcasting Means, including without limitation, in "chats" and SMS ("short message system"); (vii) performance and integration to the Services, of the Commercial Mentions indicated by Televisa within the Productions; (viii) individual or joint conduction of any of the Productions; (ix) the use of his voice for the performance and recording of phonograms; and (x) any other activity performed by the Artist or required by Televisa in any of the Productions.

31.    "Productions" are defined in the Exclusivity Agreement as:

any kind of (i) television and/or programs broadcasted live or through differed broadcasts, (ii) audio recordings, (iii) events, (iv) photograph sessions, (v) promotional segments, (vi) advertising campaigns, (vii) commercial adds, (viii) unit programs, (ix) soap opera, (x) music concerts, (xi) parades, (xii) interviews, (xiii) video grams, (xiv) computer programs, (xv) internet pages or portal, (xvi) cinematograph movies, (xvii) Productions' compilation or collections, (xviii) mini-series, (xix) movies produced for TV and/or video, (xx) reality shows, (xxi) scenic representations, including theater, (xxii) public exhibitions and (xxiii) any other kind of audiovisual plays performed by Televisa, susceptible to Fixation, Public Communication or broadcasting by means of emissions or nature and through any Broadcasting Means.

32.    "Projects" are defined in the Exclusivity Agreement as:

activity related with marketing of the Artist's Image, including without limitation; (i) advertising campaigns, (ii) commercial adds, (iii) hosting of third parties' events, (iv) events for launching of third parties' products and/or services, (v) public relations campaigns, (vi) signing of autographs and (vii) any other activity assigned by Televisa.

33.    "Image" is defined in the Exclusivity Agreement as:

the set of the Artist's physical characteristics or attributes (including, without limitation, artistic name) that Televisa gathers to create, develop and broadcast the concept that the audience has of the Artist with respect to his person or any of the characters interpreted by the latter in any of the Productions.

34.    Clause 8 of the Exclusivity Agreement states that Kristoff shall provide his Services exclusively to Televisa:

a)    By virtue of the execution of this Agreement, the Artist grants Televisa exclusivity in rendering the Services required by Televisa to perform the Productions, as chosen by Televisa.

b)    The Artist grants and ensures Televisa, full and absolute exclusivity to rendering of his Services in Mexico and abroad, therefore undertaking to abstain from rendering any of the Services to, or directly or indirectly working with any third party, without Televisa's express and written authorization.

35.    In addition, pursuant to Clause 10 of the Exclusivity Agreement, Kristoff agreed to render his Services to Televisa on an exclusive basis, and to abstain from either working for any third party or using his Image for other Productions or Projects.  Thus, Kristoff agreed to:

(i)    render his Services exclusively to Televisa, in the understanding that, for all relevant legal purposes, a work relationship shall only result between the Artist and Televisa when the Artist renders services to Televisa, as the latter requests it, under the terms of the Individual Agreement entered into by both parties each time, pursuant to the provisions of Section IV hereof;

. . . .

(iv)    abstain from using or expressly authorizing the use of his image, personal name or artistic name currently used or decides to use in the future in activities other than the Productions and/or Projects;

(v)    abstain from directly or indirectly working for any third party during the term of this Agreement, for the performance of any type of advertising campaign and/or television project, provided such advertising campaign is carried out exclusively through Televisa.

36.    In return for his agreement to render his services to Televisa on an exclusive basis, Kristoff received monthly consideration as specified in Clause 9 of the Exclusivity Agreement.  As noted above, this amount was increased 50 percent as of the parties' August 2012 amendment to the Exclusivity Agreement.

37.    Clause 16 of the Exclusivity Agreement provides:

b)    . . . in the event the Artist breaches at any time during the term of this Agreement with his exclusivity obligations pursuant to the provisions of Clause Eighth, Televisa shall be entitled to claim from the Artist payment of a contractual penalty equal to the aggregate amount of

the Compensations agreed throughout the term of the Agreement, plus the corresponding VAT. . . .

38.   Clause 24 of the Exclusivity Agreement provides:

a)   The Artist acknowledges that the Services that shall be rendered in favor of Televisa are of a special and extraordinary nature that gives them a unique value; that the loss of such services may not be reasonably or adequately compensated solely by payment of damages by virtue of a legal action; and that the Artist's breach of any of the obligations hereunder would cause an irreparable damage to Televisa.

b)   Pursuant to the foregoing, Televisa, additionally to the payment of the corresponding penalty that might result pursuant to Clause Sixteenth, shall be entitled to any legal remedy or any cautionary measure in order to prevent or remedy any breach or any eminent breach of this Agreement by the Artist.

39.   The parties further agreed in Clause 25 that the Exclusivity Agreement shall be governed and interpreted in accordance with the federal laws of Mexico.

<u>Liberman, With Knowledge of the Exclusivity Agreement, Intentionally Induced its Breach</u>

40.   Liberman has intentionally and deliberately induced Kristoff to breach his Exclusivity Agreement in utter disregard of the law.

41.   On October 12, 2012, Kristoff wrote to his direct supervisor at Telehit, Guillermo del Bosque, and advised Mr. del Bosque that Estrella TV wanted to hire him to perform in TV programming.  That day, Mr. del Bosque reminded Kristoff by telephone that he was under contract with Televisa and that he couldn't work someplace else unless he could make arrangements with Televisa releasing him from his Exclusivity Agreement.  Kristoff said that he understood and would make an arrangement.

42.   Liberman, with knowledge of Kristoff's contractual relationship with Televisa, invited Kristoff to travel to Los Angeles on or about October 14, 2012, to meet in person with Lenard Liberman.  A Televisa performer saw Kristoff on October 16, 2012, on a flight from Los Angeles to Mexico City, and Kristoff

indicated during a discussion that he was already working for Estrella TV. On October 17, Mr. del Bosque of Televisa wrote an email to Kristoff stating: "I think you are leaving?..They say that you are actually saying that you're leaving. I would like to know the truth in order to see what am I going to do."

43.   In an email to Mr. del Bosque of Televisa dated October 18, 2012, Kristoff advised Mr. del Bosque "I went to Los Angeles on Sunday, and I met with Mr. Liberman in person. We talked and solved all my doubts. I felt comfortable with our chat and with the conditions and I have decided to accept." Upon information and belief, this was a reference to the fact that Kristoff had advised Mr. Liberman that he was under an exclusive services agreement with Televisa and would be subject to legal consequences for breaching that agreement, and that Mr. Liberman had agreed to pay Kristoff an amount sufficient to compensate for that risk.

44.   On Thursday, October 18, 2012, Kristoff sent an email to Bruce Boren, Vice-President and General Manager of Televisa Networks, a Televisa business unit in charge of Telehit, officially announcing his departure from Televisa and Telehit. In that email, Kristoff acknowledges that his departure may have legal consequences arising out of the "exclusivity agreement issue"—a matter as to which Liberman was doubtlessly aware when inducing Kristoff to breach his Televisa contract.

45.   Liberman, with knowledge that Kristoff is bound to a contract with Televisa, has already cast Kristoff as host of one of Estrella TV's daily shows, "Que Jalada," which parodies home-video style "blooper" videos. These shows have already started airing, and Estrella TV is currently listing "Que Jalada" as a daily program on its website. In addition, Kristoff's image now appears on the Estrella TV website.

46.   On Friday, October 19, 2012, in an effort to protect its rights under the Exclusivity Agreement, Televisa sent Liberman a letter stating that Kristoff is party

1   to "to an exclusive contract" with Televisa covering his services and image through

2   February 2015 (the "October 19 Letter").  Televisa asked that Estrella TV and LBI

3   "immediately cease and desist from any further steps to employ Kristoff or

4   otherwise utilize his services or image in breach of his agreement with Televisa

5   Talento."

6          47.    On October 22, 2012, counsel for LBI responded to the October 19

7   Letter (the "October 22 Letter").  The October 22 Letter admits that LBI has

8   already engaged Kristoff, stating:

9          LBI already contracted with Kristoff in 2012 by engaging
           him to serve as the host of the Estrella TV television
10         program Que Jalada.  Kristoff has already entered upon
           performance of his employment relationship with LBI.  He
11         has performed in the recording of several episodes of the
           program, and the program is already airing and set to
12         continue airing on the Estrella TV  Network. . . .
           Promotions are airing in various media.  You are correct
13         that LBI has promoted the program with Kristoff on the
           internet.
14
15   The October 22 Letter also makes clear LBI has no intention of honoring Televisa's

16   request that Liberman refrain from continuing to interfere with Kristoff's

     Exclusivity Agreement and, instead, threatens that in the event Televisa seeks to
17
     enforce its rights, LBI will retaliate by asserting that Televisa and others purportedly
18
     have violated federal and state antitrust, unfair competition and other statutes –
19
     conduct that LBI admits it had always previously "overlook[ed]."
20
            48.    Counsel for Televisa responded by letter dated October 23, 2012 (the
21
     "October 23 Letter").  In that letter, Televisa supplied LBI with additional details of
22
     the duration and scope of the Exclusivity Agreement—details of which, on
23
     information and belief, Liberman was already fully aware—and again requested
24
     that LBI refrain from continuing to interfere with Televisa's exclusive employment
25
     relationship with Kristoff.
26
            49.    Liberman's counsel responded by letter dated October 24, 2012 (the
27
     "October 24 Letter"), Liberman confirmed that it had no intention of refraining
28

1  from its continued interference with the Exclusivity Agreement.  Liberman's

2  counsel again threatened to retaliate against any effort by Televisa to enforce its

3  rights by asserting various unspecified antitrust and other claims for conduct that

4  Liberman never before brought legal claims to challenge.

5       50.    Kristoff has not appeared at work for Telehit since at least October 12,

6  2012, and has not responded to repeated notices by Televisa requesting his

7  appearance at Televisa's studios in accordance with the terms of his Exclusivity

8  Agreement.

9       51.    To the extent Liberman now asserts, in contravention of the October

10  22 Letter from Liberman's counsel, that Liberman does not employ Kristoff

11  directly, but instead has engaged the Mexican "loan out company" known as

12  Darmex Broadcast Productions, S. de R.L. de C.V. ("Darmex") to provide the

13  personal services of Kristoff to LBI to host Que Jalada on the Estrella TV network,

14  Liberman has nevertheless caused Kristoff to breach his agreement with Televisa

15  by using Kristoff's services and images for programming on Estrella TV and

16  related advertising and promotion.

17  Liberman's Tortious Interference Has Injured Televisa

18       52.    For more than fifteen years, Televisa cultivated the career and artistic

19  growth of Kristoff.  Televisa gave Kristoff the opportunity to appear in and host

20  highly successful shows, many of which were developed specifically for him.

21  Televisa distributed Kristoff's shows throughout Mexico and the world.  In the

22  process, Kristoff attained widespread recognition.

23       53.    Over the past several years, Kristoff has become one of the most

24  popular hosts on Telehit.  Indeed, of Telehit's roster of fifteen regular TV hosts,

25  Kristoff is regarded as among the four most popular, and he is highly sought for his

26  programming and special appearances.  Televisa will not be able to replace

27  Kristoff, who has been especially valuable to Televisa because of his unique

28

1  personal characteristics and his expansive knowledge of pop culture, music, and
2  cinema, which he brought to his highly-rated shows.

3      54.    One of the primary reasons that Televisa invested in the career of
4  Kristoff was to reap the benefits of that investment, in the form of the goodwill that
5  Kristoff developed with Telehit audiences, once he attained a certain level of
6  recognition and artistic expertise. Liberman's tortious interference has caused
7  Televisa to lose the services of Kristoff and in so doing will cause Televisa to lose
8  the goodwill it has earned with its viewing audiences in Mexico, the United States,
9  and other countries.

10     55.    This loss of audience goodwill will result in a transfer of audience
11  loyalty away from Telehit and lower ratings for Telehit programming during the
12  next three years. Subscription revenue is the primary source of revenue for
13  Televisa's pay-TV channels, including Telehit. Lost viewers will translate into
14  lower subscription revenue, in an amount that is not readily subject to
15  measurement. As Televisa's advertising revenue is directly tied to the ratings of its
16  televised programming, this transfer of audience loyalty will also damage
17  Televisa's goodwill with its advertisers. Likewise, it will weaken Televisa's
18  relationship with other networks and broadcasters to which it licenses the rights to
19  show its programs in the U.S. and other foreign markets. These networks and
20  broadcasters may decide to drop Telehit from their lineups altogether or insist on
21  significant rate reductions if they view Telehit as an unreliable network, unable to
22  faithfully deliver its promised content. These consequences will cause substantial
23  reputational and financial injury to Televisa to a degree that is impossible to
24  calculate.

25     56.    By illegally poaching Kristoff from his contract with Televisa,
26  Liberman has also deprived Televisa of original programming in the niche genres
27  (including movie and music reviews, and sex talk, among others) that are Kristoff's
28  specialties. Televisa has no one else in its roster of television personalities with the

expertise and appeal to fill Kristoff's place and is unaware of any other rising stars in the industry who possess Kristoff's unique skill set, charm, and audience appeal—all of which Televisa has nurtured over many years. As of Wednesday, October 24, 2012, Televisa used the last of its pre-recorded episodes of Kristoff's "Cine Con Kristoff," and has been left without any new episodes of either "Sexo Con Kristoff" or "Cine Con Kristoff" going forward. Televisa has determined that, unless Liberman is enjoined from broadcasting Kristoff, Televisa's broadcasting reruns of Kristoff's shows would only further harm Televisa, by effectively resulting in an unpaid advertisement for audiences to watch future Liberman programs featuring Kristoff, rather than an enticement to watch future Televisa programming. As a result, Televisa has been relegated to filling Kristoff's time-slots with unhosted music video segments until it can develop new - as of yet, undeveloped and untested - programming.

57.    By inducing Kristoff to breach the Exclusivity Agreement, Liberman has also irreparably harmed Televisa by robbing it of the benefit of his artistic services for the upcoming program, "Lavadero Center," that Televisa had been promoting to air in the coming months (and which Televisa had already dedicated significant resources to developing), as well as other projects that Televisa and Kristoff would have developed in the remaining years of Kristoff's contract.

58.    Liberman's tortious interference is also undermining the perception of the enforceability of Televisa's exclusive contracts with artists, hosts, producers, and directors, among others. If Liberman and other of Televisa's competitors believe that they can poach Televisa's talent even when they are under contract, then the exclusive commitments that Televisa bargained for and received from those personalities will lose their value. In short, Televisa will be robbed of one of the primary benefits of its bargain in each and every one of its hundreds of artist contracts.

1

2

### Claim for Relief

Tortious Interference with Kristoff's Exclusivity Agreement

3       59.    Plaintiffs incorporate by reference all preceding paragraphs as if fully

4   set forth herein.

5       60.    The Exclusivity Agreement constitutes a valid and enforceable civil

6   contract under Mexican law, the material terms of which are memorialized therein.

7       61.    Liberman had requisite knowledge of the Exclusivity Agreement, or at

8   the least knew that Kristoff was subject to an exclusive agreement with Televisa.

9       62.    Liberman, with knowledge that Kristoff was subject to an exclusive

10   services agreement, intentionally induced Kristoff to breach the Exclusivity

11   Agreement.

12       63.    As a direct and proximate cause of Liberman's interference, Kristoff

13   breached the Exclusivity Agreement by allowing his services and images to be used

14   by Liberman.

15       64.    Liberman continues to interfere with the Exclusivity Agreement by

16   employing Kristoff and/or using his services and image in its television

17   broadcasting and promotional materials.

18       65.    As a direct and proximate result of Liberman's interference with the

19   Exclusivity Agreement, Televisa has suffered and will continue to suffer

20   irreparable harm.

21       66.    The harm to Televisa if an injunction is not granted will far outweigh

22   the harm to Liberman if an injunction is granted, and an injunction will serve the

23   public interest.

24       67.    Liberman had actual knowledge of the wrongfulness of the acts

25   alleged herein and the high probability that those acts would cause damage to

26   Televisa.  With such knowledge, Liberman intentionally, recklessly, and

27   maliciously pursued the course of conduct alleged herein in utter disregard of the

28

1   law, resulting in damage to Televisa, thus warranting an award of punitive damages

2   under California law.

### Prayer for Relief

Wherefore, Plaintiffs pray for judgment as follows:

a.   Declaring that Liberman has tortiously interfered with the Exclusivity Agreement;

b.   Enjoining Liberman, preliminarily and permanently, from continuing to tortiously interfere with the Exclusivity Agreement by enjoining Liberman from employing Kristoff and/or making use of his services or image in any capacity during the duration of the Exclusivity Agreement;

c.   To the extent that the Court finds that any of the harm Liberman has caused Televisa may be compensable in money damages, awarding Televisa compensatory damages under applicable law as a result of the allegations alleged herein;

d.   Awarding Plaintiffs punitive damages to the extent permitted under California law;

e.   Awarding Plaintiffs their costs and expenses in this litigation, including reasonable attorneys' fees and other costs and disbursements:

f.   Awarding Plaintiffs such other and further relief as may be just and proper under the circumstances.

1  DATED:  November 15, 2012

2

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3

4  By

5  Shon Morgan
   Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04962.62600/5055524.4

-18-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 9799 CBM  (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Shon Morgan
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Televisa, S.A. de C.V.<br>Televisa Talento, S.A. de C.V.<br><br>v.<br><br>Liberman Broadcasting, Inc.<br>Estrella TV and<br>Lenard D. Liberman | CASE NUMBER<br><br>**CV 12  9799** —CBM(MAN)<br><br><br><br>**SUMMONS** |
| PLAINTIFF(S) | |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within    21    days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Shon Morgan _____, whose address is Quinn Emanuel Urquhart, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017    . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: NOV 1 5 2012 _____

By: _____ MARILYN DAV...
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11)                                **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Televisa, S.A. de C.V.
Televisa Talento, S.A. de C.V.

**DEFENDANTS**
Liberman Broadcasting, Inc.
Estrella TV
Lenard D. Liberman

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017
(213) 443-3000

**Attorneys** (If Known)
North Nash & Abendroth, LLP
2 Park Plaza, Irvine CA 92614
949-752-2200

(CONFORMED stamped vertically in left margin)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity action under 23 U.S.C. § 1332. Mexico corporations are suing California defendants for intentional interference with contract.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☑ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | RR. & TRUCK | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV12 9799

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☑ Yes
If yes, list case number(s): <u>No. CV12-09344-DSF-SH</u>

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Mexico |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date November 15, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |